**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-00927 MMM (AJWx) | Date | October 8, 2010 |
|---|---|---|---|
| Title | *Rebecca Yumul v. Smart Balance, Inc.* | | |

| Present: The Honorable | MARGARET M. MORROW |
|---|---|
| ANEL HUERTA | N/A |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **Order Granting Plaintiffs' *Ex Parte* Motion to Strike Improper Filings[36]; Denying Defendant's Motion to Modify the Court's Scheduling Order[37]**

## I. PROCEDURAL BACKGROUND

On August 16, 2010, plaintiff Rebecca Yumul filed a notice of termination of counsel, terminating Beck & Lee Business Trial Lawyers ("Beck & Lee") as her counsel in this matter.[1] The notice was filed by Beck & Lee's former co-counsel, the Weston firm ("Weston"), which continues to represent Yumul in this case. On August 17, 2010, Beck & Lee filed a pleading requesting that the court strike the notice of termination, alleging ethical violations by the Weston,[2] and seeking Weston's disqualification. Beck & Lee asserts that Weston has filed a suit in the Southern District of California to determine the validity of the Joint Prosecution Agreement ("JPA") that governed Beck & Lee's co-counsel relationship with Weston in this and other class actions. On August 18, 2010, Yumul filed an *ex parte* application to strike Beck & Lee's filings.[3]

The next day, defendant Smart Balance, Inc. ("SBI") filed a response to plaintiff's application

[1]Notice of Termination of Counsel, Docket No. 31 (August 16, 2010).

[2]Memorandum of Points and Authorities in Opposition, Docket No. 32 (August 17, 2010).

[3]*Ex Parte* Application to Strike Improperly Filed Documents, Docket No. 36 (August 18, 2010).

and Beck & Lee's motion for disqualification. Citing Rule 16(c)(2)(P), SBI requested that the court schedule a hearing with all counsel and amend the scheduling order to stay proceedings until the uncertainty created by the dispute between plaintiff's co-counsel is resolved.[4] On August 20, 2010 plaintiff filed a reply to SBI's response, opposing any modification of the scheduling order and once again asking that the court strike Beck & Lee's August 17, 2010 filing.[5]

The parties' filings raise three primary issues: (1) whether the court should grant plaintiff's *ex parte* application on the basis that Beck & Lee cannot file pleadings in this action following its termination by Yumul; (2) whether the court should disqualify Weston as Yumul's counsel; and (3) whether the scheduling order should be amended in light of the uncertainty generated by the conflict between Weston and Beck & Lee.

## II. DISCUSSION

### A. Whether the Court Should Grant Plaintiff's *Ex Parte* Application

Plaintiff moves to strike Beck & Lee's opposition to the notice of termination on the grounds that it interferes with her absolute right to discharge her attorney. She also contends that the filing violates Local Rule 11-1.

"It has long been recognized in [California] that the client's power to discharge an attorney, with or without cause, is absolute." *Fracasse v. Brent*, 6 Cal.3d 784, 790 (1972). See also *Aaron v. Aguirre*, No. 06-CV-1451 H (POR), 2008 WL 2812179, *4 (S.D. Cal. July 21, 2008) ("[T]he client possesses the ultimate authority to choose the client's attorney, and . . . has the 'absolute right' to change attorneys at any stage in a case," citing *Meadow v. Superior Court*, 59 Cal.2d 610 (1963)); *In re Complex Asbestos Litigation*, 232 Cal.App.3d 572, 586 (1991) (recognizing clients' right to counsel of their choice). Plaintiff asserts that she exercised this right when she terminated Beck & Lee as her counsel in this action. The court agrees, and is compelled to allow plaintiff to exercise her right to discharge Beck & Lee.[6]

---

[4]Opposition to *Ex Parte* Application to Strike Improperly Filed Documents, Docket No. 37 (August 19, 2010).

[5]Response in Support of *Ex Parte* Application to Strike Improperly Filed Documents, Docket No. 38 (August 20, 2010).

[6]Allowing plaintiff to terminate Beck & Lee as counsel does not prevent the firm from recovering the reasonable value of the services it has performed to date. See, e.g., *Alvarado v. FedEx Corp.*, Nos. C 04-0098 SI, C 04-0099 SI, 2009 WL 5113998, * 1 (N.D. Cal. December 18, 2009) (awarding fees on a *quantum meruit* basis to previously discharged class counsel).

On September 15, 2010, Beck & Lee lodged a copy of an order by Judge James Ware of the Northern District of California denying plaintiffs' motion to terminate Beck & Lee in *Red et al. v.*

Given that she has discharged Beck & Lee, Yumul moves to strike Beck & Lee's post-termination filings on the grounds that Beck & Lee's opposition violates Local Rule 11-1. CA CD L.R. 11-1. ("All documents, except declarations, shall be signed by the attorney for the party or the party appearing pro se"). Yumul argues that Beck & Lee is no longer an "attorney for [a] party" and that the filings were thus improper.[7] The court agrees that Beck & Lee was effectively discharged as soon as the firm was made aware of Yumul's decision to terminate its services. Once an attorney has been terminated, he loses the authority to speak for the client or file pleadings on the client's behalf. See, e.g., *Yetman v. Gilbert Corp. of Delaware*, 483 S.E.2d 878, 882 (Ga.App. 1997)

---

*Unilever PLC et al.*, No. 10-cv-00387-JW. (Notice, Docket No. 46 (September 15, 2010).) In *Rea*, the parties had signed a term sheet outlining a settlement of a class action. Before Judge Ware could hold a hearing on preliminary approval of the settlement, however, plaintiffs, through Weston, filed a notice terminating Beck & Lee and another attorney, Reese Richman, as class counsel. Beck & Lee filed an opposition that asserted the same ethical charges it makes here. Judge Ware held a hearing concerning the matter on September 13, 2010.

Judge Ware determined that "because of the unanimous interest in proceeding with the settlement . . . it would be in the best interest of the class if the Court established a procedure that would permit the settlement to proceed and that would defer the attorney fees division to a later proceeding." (*Id.* at 4). Specifically, he expressed concern that "granting the Motion to Terminate two of the law firms who were involved in negotiating the settlement could jeopardize the settlement." (*Id.*) Consequently, he refused to allow plaintiffs to terminate Beck & Lee and Reese Richman as class counsel.

The circumstances in this case dictate a different result. Here, there is no pending settlement. Nor, indeed, has the matter progressed beyond the initial stages of discovery. Given a party's absolute right to terminate her attorney, refusing to give effect to plaintiff's termination of Beck & Lee would compel her to accept representation for the pendency of this action that violates her absolute right to discharge counsel under California law. Judge Ware's concern in *Rea* appears to have been how he would properly award attorneys' fees for work done on the case, including negotiation of the settlement. Here, as noted, the case is in an early stage, and Beck & Lee can pursue a *quantum meruit* recovery for work done to date.

The court notes that at least two other courts handling cases previously litigated by Beck & Lee and Weston as co-counsel have allowed Beck & Lee's former clients to terminate the firm as attorneys of record. (See Declaration of Gregory S. Weston, Docket No. 52 (October 7, 2010) (attaching the orders of Judge Claudia Wilken in *Stuart Logan v. Apple Inc. et. al.*, No. 10-2588 CW and Judge Dolly M. Gee in *Jennifer Red et. al. v. The Kroger Company*, No. 10-1025 DMG (MANx))).

[7]Yumul's application seeks to strike only Beck & Lee's first post-termination filing, the opposition to plaintiff's notion of termination. Since that time, Beck & Lee has filed several notices and motions, including an *ex parte* application for protective order currently pending before Magistrate Judge Andrew J. Wistrich. (*Ex Parte* Application, Docket No. 41 (September 7, 2010)). This ruling applies to all of Beck & Lee's post-termination filings; the court therefore directs the clerk to strike all pleadings filed by Beck & Lee since Yumul's August 16, 2010 notice of termination.

(holding that "after discharge counsel loses rights and powers to control the suit. . ."). Consequently, Beck & Lee's post-termination filings were improper. See *El-Ad Residence at Miramar Condominium Ass'n, Inc. v. Mt. Hawley Ins. Co.*, _ F.Supp.2d _, 2010 WL 2232698, *6 (S.D. Fla. June 2, 2010) (deny former counsel's motion to intervene to "'respond to the personal attacks made upon them individually by [current counsel]" since "[former counsel] no longer represents Residences, thus he no longer has a voice in this lawsuit to make additional claims about his former law partners. There are other forums in which the former law partners can air their grievances against one another: they are already embroiled in judicial dissolution proceedings, and if complaints have not already been filed with the Florida Bar, they are likely to be").

**B. Whether the Court Should Disqualify Weston as Counsel**

Whatever the propriety of Beck & Lee's post-termination filings, the court cannot ignore the allegations they contain concerning unethical conduct by Weston, plaintiff's current counsel. "A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'" *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1145 (1999). See also *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) ("Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession. This means that a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety," quoting *Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322, 1324-25 (9th Cir. 1996), in turn quoting *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385-86 (3d Cir. 1972)). "[W]here counsel is in violation of professional ethics, the court may act on motion of an aggrieved party or may act *sua sponte* to disqualify." *O'Connor v. Jones*, 946 F.2d 1395, 1399 (8th Cir. 1991).

Disqualification, however, "is a drastic measure that is disfavored." *Crenshaw v. MONY Life Ins. Co.*, 318 F.Supp.2d 1015, 1020 (S.D. Cal. 2004); see also *Concat LP v. Unilever*, PLC, 350 F.Supp.2d 796, 814 (N.D. Cal. 2004) ("Because disqualification is a drastic measure, it is generally disfavored and should only be imposed when absolutely necessary"). Courts frown on disqualification because motions seeking disqualification set up "a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." *SpeeDee Oil* at 1145. Because "[a] motion to disqualify a party's counsel may implicate several important interests," it is important that "judges . . . examine [such] motions carefully[,] . . . [bearing in mind] such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *Id.* at 1144-45. See also *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) ("'[I]n disqualification matters we must be solicitous of a client's right freely to choose his counsel – a right which of course must be balanced against the need to maintain the highest standards of the profession,'" quoting *Government of India v. Cook Industries, Inc.*, 569

F.2d 737, 739 (2d Cir. 1978)); *United States v. Brothers*, 856 F.Supp. 370, 375 (M.D. Tenn. 1992) ("Motions to disqualify opposing counsel are disfavored [as d]isqualification has a serious and immediate adverse effect by denying the client his choice of counsel" (internal quotations omitted)).

Such motions are also disfavored because they are frequently pursued for tactical reasons. See *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985) (expressing "concern about 'tactical use of disqualification motions' to harass opposing counsel"); *Optyl Eyewear Fashion International Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) ("Because of this potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny" (internal quotations omitted)); *O'Shea v. Epson America, Inc.*, No. CV 09-8063 PSG (CWx), 2010 WL 2305863, *2 (C.D. Cal. June 4, 2010) ("In fact, '[b]ecause a motion to disqualify is often tactically motivated and can be disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored and should only be imposed when absolutely necessary,'" quoting *Concat*, 350 F.Supp.2d at 814); *Gregori v. Bank of America*, 207 Cal.App.3d 291, 300-01 (1989) ("Motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent").

Because the dispute concerning the co-counsel agreement between Weston and Beck & Lee and allegedly unethical conduct by Weston is presently the subject of a suit pending in the Southern District of California, the court need not entertain a motion for disqualification filed by a party other than Yumul or defendant to ensure the integrity of these proceedings. See *El-Ad Residences*, 2010 WL 2232698 at *6 (rejecting a request by former counsel to conduct an ancillary proceeding "to sanction [current counsel] for his alleged unauthorized disclosures of his clients' privileged information . . . , enjoin [current counsel] from future similar conduct, determine whether [current counsel] violated Florida Bar Rules of Professional Conduct 4-1.6, 4-1.9(b)-(c), and to disqualify Defendants' counsel because [current counsel] has given them [former counsel's] privileged information"). This is particularly true since Beck & Lee's allegations do not specifically concern this case and no evidence has been adduced supporting them and since there is at least a possibility that Beck & Lee made the allegations to gain a tactical advantage in its dispute with Weston concerning the co-counsel agreement. Allowing the Southern District of California to address the matter, moreover, will have the added benefit of avoiding duplicative litigation and inconsistent rulings.[8] See *id.* at *8 ("This Court . . . declines to engage in a free-ranging inquiry into matters

---

[8]It is unclear whether Beck & Lee has standing to file a motion for disqualification in this case. Courts are divided as to whether a lawyer, rather than a client or litigant, has standing to seek another lawyer's disqualification. One frequently applied rule in conflicts of interest cases, which may be applicable to allegations of other types of unethical conduct, is that only a present or former client has standing to seek an attorney's disqualification. See *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976) (recognizing the general rule that a former client must move for an attorney's disqualification on grounds of conflict of interest). "To allow an unauthorized surrogate to champion the rights of the former [or current] client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not exist." *Id.* at 90. See also *Black v. Missouri*, 492 F.Supp. 848, 861 (W.D. Mo. 1980) ("As a general rule, courts do not disqualify an

attorney on the grounds of conflict of interest unless the former client moves for disqualification"). Several courts, however, have recognized exceptions to this rule. See *In re Gopman*, 531 F.2d 262, 265 (5th Cir. 1976) (attorney discovering possible a ethical violation was both authorized and obligated to bring it to the court's attention); *Estates Theatres, Inc. v. Columbia Pictures Industries, Inc.*, 345 F.Supp. 93, 98 (S.D.N.Y. 1972) (stating that the ABA Model Code mandates that attorneys report ethical violations to the court). "These cases, relying on a court's well recognized power to control the conduct of the attorneys practicing before it, locate in the ethical standards and reporting duties imposed on attorneys by the Model Code of Professional Responsibility and the Model Rules of Professional Conduct a source of 'rules[-]based' standing in attorneys seeking to disqualify opposing counsel for ethical violations." *Decaview Distribution Co., Inc. v. Decaview Asia Corp.*, No. C 99-02555 MJJ (ME), 2000 WL 1175583, *8 (N.D. Cal. Aug. 14, 2000).

As is evident, *Decaview Distribution* limited its holding to a motion filed by a party seeking to disqualify opposing counsel; it did not address a motion filed by terminated former counsel to disqualify current counsel. Other cases that explicitly address standing to bring a motion to disqualify likewise involve a party that seeks to disqualify opposing counsel. See *Colyer v. Smith*, 50 F.Supp.2d 966, 971-72 (C.D. Cal. 1999) ("It seems clear to this Court that a non client *litigant* must establish a personal stake in the motion to disqualify sufficient to satisfy the 'irreducible constitutional minimum' of Article III. Generally, only the former or current client will have such a stake in a conflict of interest dispute. However, as the Delaware Supreme Court noted in *In re Appeal of Infotechnology Inc.*, [ 582 A.2d 215 (Del. 1990),] in a case where the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party[-litigant]'s interest in a just and lawful determination of her claims, she may have the constitutional standing needed to bring a motion to disqualify based on a third-party conflict of interest or other ethical violation. In such a case, moreover, the prudential barrier to litigating the rights and claims of third parties should not stop a district court from determining the motion, because such a limitation would be overcome by the court's inherent obligation to manage the conduct of attorneys who appear before it and to ensure the fair administration of justice" (emphasis supplied)).

The court has found no case in which former counsel was permitted to seek disqualification of the client's current counsel. Even if the standard used to evaluate standing to cases in which the opposing litigant is entitled to seek disqualification were applied, however, Beck & Lee's standing is uncertain. *Decaview Distribution* adopted a standard similar to that articulated in *Colyer*, holding that "in a case where the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims, she may have the constitutional standing needed to bring a motion to disqualify based on a third-party conflict of interest or other ethical violation." *Id.* at *9 (citations omitted).

The Ninth Circuit has not squarely addressed the issue. The court, however, cannot identify how an order disqualifying or declining to disqualify Weston would impact Beck & Lee's interest in having its ethics claim decided. As noted, Yumul had an absolute right to terminate Beck & Lee, which she exercised. The fact that she has done so does not prejudice or impair Beck & Lee's ability to recover the reasonable value of the time it has devoted to this action. Beck & Lee has no cognizable right to recover additional fees, since Yumul's right to terminate is absolute. Any

pending before other courts, as those courts are best suited to manage their own proceedings. Allegations of inflated insurance claims, kickbacks and improper business relationships between lawyers and consultants have been raised in the course of similar litigation before other courts, where they have been addressed in the context of those proceedings without having to embark on a sweeping investigation. The only new information here is [a consultant's] March 30 deposition testimony in which he recanted his earlier accusations of misconduct by [former counsel] and others, and [current counsel'] disclosure, at the April 16 hearing, of [former counsel's] alleged suggestion that [the consultant] could be paid to recant that testimony. These developments, without doubt, are extraordinary. They do not require this Court, however, to broadly investigate matters before other courts and issue rulings that may limit how other courts deal with this evidence, if at all, in the cases before them").

In determining whether to certify a class in this case, however, unethical conduct by plaintiff's counsel would be a relevant consideration. See *Walter v. Palisades Collection, LLC*, Civil Action No. 06-378, 2010 WL 308978, *10 (E.D. Pa. Jan. 26, 2010) ("Prior unethical conduct is a relevant consideration pursuant to certification under Rule 23(a)(4)"); *Walter v. Palisades Collection, LLC*, No. 06-378, 2010 WL 308978, *9 (E.D. Pa. Jan. 26, 2010). ("Although the Court would not in the ordinary case undertake a careful review of counsel's qualifications where counsel is freely retained by a party for litigation, in the class action context, where counsel is charged with representing the interests of absentee class members, it is necessary and appropriate to delve into the particular qualifications of [proposed class counsel]"); *Bogner v. Masari Investments, LLC*, 257 F.R.D. 529, 533 (D. Ariz. 2009) (examining prior ethical complaints against proposed class counsel in a FDCPA class action); *Hall v. Midland Group*, No. Civ. A. 99-3108, 2000 WL 1725238, *3 (E.D. Pa. Nov. 20, 2000) ("The character and ethics of class counsel may conceivably bear on the adequacy of representation"). See also *El-Ad Residences*, 2010 WL 2232698 at *8 (noting that the "Court has procedural mechanisms in place that allow it to consider [the allegations of former counsel and current counsel], as necessary to bring this case to a just conclusion").

Rule 23(g)(1)(A) of the Federal Rules of Civil Procedure requires that the court appoint class counsel if it certifies a class. Here, as noted, the question of certification has not yet been litigated. In determining whether a class should be certified, the court can properly consider whether proposed class counsel has acted ethically. See *id.* at *10 (denying a class certification motion on the basis that plaintiff's counsel would not adequately represent the class given his history of ethical violations). See also *Stavrides v. Mellon Nat. Bank & Trust Co.*, 60 F.R.D. 634, 636-37 (W.D. Pa. 1973) (holding that "class action status should be denied where counsel's unethical conduct has been or is prejudicial to the interests of the class. . . . [I]t is proper for courts to consider the ethical conduct

---

contractual rights Beck & Lee may have under the co-counsel agreement with Weston, moreover, are the subject of the action pending in the Southern District of California; presumably, if Beck & Lee prevails in that action, it will seek to recover damages from Weston. Thus, Beck & Lee has the ability to secure a just and lawful determination of its claims, and the court questions whether it has standing to seek to disqualify the Weston firm in this case.

of plaintiffs' counsel in deciding whether to certify a class").[9] As plaintiff has yet to file a motion for class certification, however, the court need not consider the adequacy of Weston and Yumul to serve as class counsel and class representative at this juncture.

**C. Whether the Court's Scheduling Order Should be Amended**

SBI asks that the court amend its scheduling order given the uncertainty caused by the conflict between Weston and Beck & Lee. The scheduling order "controls the subsequent course of the action" unless modified by the court. FED.R.CIV.PROC. 16(e). Rule 16(b) provides that the "scheduling order shall not be modified except by leave of court and upon a showing of good cause." FED.R.CIV.PROC. 16(b). Thus, defendant must show "good cause" to obtain an extension of dates. See *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).

As the various filings by Weston and Beck & Lee have generated uncertainty as to whether and how the firms' competing allegations should be addressed in the context of this action, the court concludes that SBI has shown good cause for modification of the scheduling order.

| | |
|---|---|
| Deadline to file motion for class certification: | November 22, 2010 |
| Deadline to file opposition: | December 20, 2010 |
| Deadline to file reply: | January 10, 2011 |
| Hearing on motion for class certification: | January 31, 2011 at 10:00 a.m. |
| Further telephone status conference: | February 10, 2011 at 5:00 p.m. |
| Fact discovery cut-off: | February 25, 2011 |
| Initial expert disclosures: | March 11, 2011 |
| Rebuttal expert disclosures: | March 25, 2011 |
| Expert discovery cut-off: | April 8, 2011 |
| (All discovery motions are to be filed sufficiently in advance of the discovery cut-off date that they may be heard on or before that date) | |
| Motion hearing cut-off: | May 2, 2011 at 10:00 a.m. |
| Pretrial Conference: | June 6, 2011 at 9:00 a.m. |
| (Including motions in limine) | |
| Jury Trial: | July 5, 2011 at 8:30 a.m. |

[9]Presumably, if defendant believes that the ethics of class counsel is an appropriate issue to raise in opposition to a motion for class certification, it will bring the matter to the attention of the court.

## III. CONCLUSION

For the reasons stated, the court grants plaintiff's *ex parte* application to strike Beck & Lee's opposition to the notice of termination and also grants defendant's motion to amend the scheduling order. The court also strikes Beck & Lee's additional post-termination filings. It denies all other forms of relief sought in the filings of the parties and counsel regarding the *ex parte* application and the notice of termination.