E-filed: 05.27.11

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA YUMUL, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SMART BALANCE, INC.,<br><br>Defendant. | ) CASE NO. CV 10-00927 MMM (AJWx)<br>)<br>)<br>) ORDER GRANTING IN PART AND<br>) DENYING IN PART DEFENDANT'S<br>) MOTION TO STRIKE<br>)<br>)<br>)<br>)<br>)<br>) |

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

Rebecca Yumul filed this putative class action against Smart Balance, Inc. ("Smart Balance" or "SBI") on February 8, 2010.[1] On May 24, 2010, the court granted defendant's motion to dismiss the complaint with leave to amend for failure to allege with particularity the

---

[1] Complaint for Violations of Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act ("Complaint"), Docket No. 1 (Feb. 8, 2010).

facts on which the claims were based.[2] On July 19, 2010, the court held a scheduling conference and issued a case management order setting August 16, 2010 as the deadline for motions or stipulations to amend the pleadings.[3]

On July 30, 2010, it granted defendant's second motion to dismiss to the extent the complaint alleged claims that predated the limitations period.[4] The court directed Yumul to file a second amended complaint alleging the facts on which she based her invocation of the delayed discovery rule. On August 12, 2010, plaintiff filed a second amended complaint.[5] On November 22, 2010, she filed a motion for class certification.[6] Defendant opposed certification, asserting that plaintiff's claims were preempted by the Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. § 301, et seq., and the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343(r), et seq.[7]

On March 14, 2011, the court denied plaintiff's motion for class certification and granted defendant's motion to dismiss the complaint as preempted by federal law.[8] In a footnote in her reply in support of the motion for class certification, plaintiff argued that "[a]lthough the [second amended complaint's] UCL count does not expressly reference the Sherman Law, the Court should nevertheless construe the [complaint] 'so as to do justice,' FED.R.CIV.PROC. 8(e), and find

---

[2] Order Granting in Part and Denying in Part Defendant's Motion to Dismiss ("First Order"), Docket No. 18 (May 17, 2010).

[3] Minutes of Defendant's Motion to Dismiss; Scheduling Conference ("Scheduling Order"), Docket No. 27 (July 19, 2010).

[4] Order Granting in Part and Denying in Part Defendant's Motion to Dismiss ("Second Order"), Docket No. 29 (July 30, 2010).

[5] Second Amended Complaint ("SAC"), Docket No. 30 (August 12, 2010).

[6] Motion to Certify Class, Docket No. 54 (November 22, 2010). See also Reply to Certify Class, Docket No. 60 (January 10, 2011).

[7] Opposition to Motion to Certify, Docket No. 57 (December 20, 2010).

[8] Order Denying Class Certification 54 ; Dismiss Complaint with Leave to Amend ("Third Order"), Docket No. 73 (March 14, 2011).

2

that Plaintiff's allegations (i.e., that SBI's statements are false and misleading under FDA regulations) state Sherman Law violations supporting Plaintiff's UCL claim. This is especially true because preemption is being raised for the first time in opposition to class certification. Alternatively, if the Court were to find [that] the [second amended complaint] insufficiently alleges direct violations of the FDCA and the Sherman Law, Plaintiff would respectfully request leave to amend."[9]

The court concluded that dismissal with leave to amend was appropriate because the "second amended complaint failed to put Smart Balance on notice that Yumul contended it had violated California's Sherman Law."[10] The court noted that "Yumul's new allegations, raised for the first time in her reply in support of class certification, identify specific FDA regulations that she now contends were violated. While the claim is factually related to the UCL claim pled in the second amended complaint – e.g., plaintiff still appears to argue that defendant's use of the terms 'Cholesterol Free' and 'healthy' was false and misleading – the foundation of the claim is entirely different. Yumul for the first time asserts that Smart Balance engaged in unfair business practices by labeling its product as it did because the label does not comport with the FDCA and accompanying regulations. This claim, which can only be based on the FDCA or California's Sherman Law, is not pled in the second amended complaint."[11] The court granted plaintiff leave to amend a claim for violation of California's Sherman Law and/or the FDCA.

At the hearing on plaintiff's motion for class certification, defendant expressed concern that allowing plaintiff to amend the complaint for a third time at such a late stage of the litigation, would prejudice its ability to prepare a defense. Defense counsel stated: "[W]e're effectively starting this case over from scratch. . . . We're coming up on a fact discovery cutoff, and we're coming up on expert discovery cutoff for a trial later this year on a set of facts that have never

---

[9]Reply to Certify Class at 19 n. 14.

[10]Third Order at 22.

[11]*Id.*

3

been disclosed to me."[12] The court responded: "I don't agree with you that the nature of the violations that they are going to allege is going to be . . . dramatically different [from] the allegations that they have already alleged . . . ."[13] Defense counsel replied:

> "Remember, this started out as a trans fat case and the evils of trans fat and how we had deceived people about trans fat. . . . Where we started off on this case back many months ago was whether the juxtaposition of healthy in one sentence on certain labels made the no cholesterol declaration false or misleading. Your Honor has correctly found that that's preempted. And so a claim under state law that would say you can't say healthy here and no cholesterol here under state law regardless of what the federal [law] says, that would create a new standard, and that's exactly what the NLEA prevents one from doing. So that's how much the case has morphed from where we . . . start[ed] [–] . . . whether it's healthy juxtaposed with no cholesterol that makes this label misleading. . . . And what we're now looking at is a third amended complaint talking about . . . very specific technical per se alleged violations . . . on the package and label. . . . So what we have necessarily is a very new and different lawsuit based on . . . alleged . . . specific narrow hyper technical . . . per se violations."[14]

On March 24, 2011, plaintiff filed a third amended complaint.[15] On April 12, 2011, the court continued the case management schedule three months to accommodate additional discovery and motion practice related to plaintiff's third amended complaint.[16] On April 15, 2011, defendant filed a motion to strike certain allegations in the third amended complaint on the grounds that they

---

[12] Reporter's Transcript of Proceedings (March 14, 2011) at 7:19-20, 8:24-9:2.

[13] Id. at 9:3-6.

[14] Id. at 10:24-12:4.

[15] Third Amended Complaint ("TAC"), Docket No. 75 (March 24, 2011).

[16] Order Re: Joint Scheduling Stipulation, Docket No. 80 (April 12, 2011).

4

exceeded the scope of the court's order granting leave to amend.[17] Plaintiff opposes the motion.[18]

      **B.    The Allegations of the Third Amended Complaint That Defendant Moves to Strike**[19]

            **1.    Failure to Comply with Federal Regulations**

Consistent with the court's order granting leave to amend, plaintiff's third amended complaint contains allegations that defendant's margarine labels do not comply with the FDCA and NLEA regulations. For example, plaintiff's third amended complaint alleges:

> "21 C.F.R. § 101.13(h)(1) provides that if a food 'contains more than 13.0g of fat, 4.0g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30g or less or 2 tablespoons or less [i.e., a small RACC food], per 50g . . . , then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: 'See nutrition information for __ content' with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., 'See nutrition information for fat content.' . . . Because Nucoa contained 39.3g total fat, 7.1g saturated fat and 571mg sodium per 50g, in order to comply with this section, the First Nucoa Label must have borne the statement 'See nutrition information for fat, saturated fat, and sodium content.' As depicted above, the First Nucoa Label bore the statement 'See back panel for information on saturated fat, sodium and other nutrients.' This statement violates § 101.13(h)(1) in that the statement both is not in the form

---

[17] Motion to Strike ("Motion"), Docket No. 82 (April 15, 2011). See also Reply, Docket No. 85 (April 29, 2011)

[18] Opposition, Docket No. 84 (April 22, 2011).

[19] The factual allegations of the second amended complaint are well known to the parties and were discussed by the court in its order on plaintiff's motion for class certification. (See Third Order at 3-6). The court therefore focuses only on the new allegations in the third amended complaint that defendant seeks to strike.

5

> prescribed (for example, directing the consumer to 'See back panel' rather than 'See nutrition information'), and fails to direct the consumer to the nutrition information for fat, which is more than triple (39.3g) the prescribed level (13g)."[20]

Defendant does not object to the inclusion of this allegation in the third amended complaint. It does object, however, to allegations in paragraphs 75 through 78 that follow:

> "By violating § 101.13(h)(1), SBI failed to draw consumers' attention to the fact that, despite its lack of cholesterol, Nucoa was very high in fat. [¶] Unlike SBI's Nucoa, competitor products in compliance with this regulation drew consumers' attention to their high fat content. [¶] Therefore, by violating the regulation and using 'Cholesterol Free' without the required disclaimer, SBI suggested Nucoa was better than or healthier than competitor products. [¶] This representation was especially insidious, and therefore especially deceptive, false and misleading, in light of Nucoa's high trans fat content."[21]

Defendant raises similar objections to paragraphs 84-86, 92-95, 98-100, 106-108, 117-120, 123-125, and 131-133, each of which also contains allegations regarding "[c]ompetitor products."[22]

---

[20]TAC, ¶¶ 71-74.

[21]*Id.*, ¶¶ 75-78.

[22]See, e.g., *id.*, ¶¶ 84-86 ("Competitor products in compliance with this regulation disclosed that margarines or similar spreads are naturally cholesterol-free foods, rather than specially processed to remove cholesterol, as SBI's 'Cholesterol Free' claim on Nucoa falsely suggests. By violating the regulation and using 'Cholesterol Free' without the required disclaimer, SBI misleadingly suggested Nucoa was better than or healthier than competitor products. This representation was especially insidious, and therefore especially deceptive, false, and misleading, in light of the high trans fat content of Nucoa"); *id.*, ¶¶ 92-95 ("By violating § 101.13(h)(1), SBI failed to draw consumers' attention to the fact that, despite its lack of cholesterol, Nucoa was very high in fat. Unlike SBI's Nucoa, competitor products in compliance with this regulation drew consumers' attention to their high fat content. Therefore, by violating the regulation and using 'Cholesterol Free' without the required disclaimer, SBI suggested Nucoa was better than or healthier than competitor products. This representation was especially insidious, and therefore especially deceptive, false, and misleading, in light of Nucoa's high trans fat content."); *id.*, ¶¶ 106-108 ("Competitor products in compliance with this regulation disclosed that margarines or similar spreads are naturally cholesterol-free foods, rather than specially processed to remove

### 2. Other Additional Allegations

In addition to including allegations regarding defendant's failure to comply with federal regulations, plaintiff's third amended complaint contains other allegations that were not in her prior complaints. Defendant moves to strike the additional allegations, i.e., (1) paragraph 11, which alleges that "[t]he majority of Nucoa manufactured during the Class Period was manufactured in California"; (2) paragraphs 165, 167-181 under the "Delayed Discovery" sub-heading; (3) paragraphs 182-198 under the "Reliance & Injury" sub-heading; and (4) paragraphs 199-218 under the "As a Result of This Lawsuit, SBI Reformulated & Relabeled Nucoa" sub-heading.[23]

## II. DISCUSSION

### A. Legal Standard Governing Motions To Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, the court may strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." FED.R.CIV.PROC. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (quoting 5 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1382, at 706-707 (1990)), rev'd on other grounds *sub nom. Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). "Impertinent matter consists of statements that do not pertain, and are not necessary, to

---

cholesterol, as SBI's "Cholesterol Free" claim on Nucoa falsely suggests. By violating the regulation and using "Cholesterol Free" without the required disclaimer, SBI misleadingly suggested Nucoa was better than or healthier than competitor products. This representation was especially insidious, and therefore especially deceptive, false, and misleading, in light of the high trans fat content of Nucoa").

[23]Motion at 8-11.

the issues in question." *Id.*  See also *Federal Deposit Ins. Corp. v. Niblo*, 821 F.Supp. 441, 449 (N.D. Tex. 1993) (noting that Rule 12(f) motions will be granted when necessary to discourage parties from filing "dilatory" pleadings and papers).

"Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.  The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw unwarranted inferences at trial[, however,] is the type of prejudice that is sufficient to support the granting of a motion to strike." *Benham v. American Servicing Co.*, No. C 09-01099 JSW, 2009 WL 4456386, *8 (N.D. Cal. Nov. 30, 2009) (citations omitted).

Federal courts have frequently exercised their power under Rule 12(f) to strike pleadings that exceed the scope of a permitted amendment.  See, e.g., *Barker v. Avila*, No. 2:09-cv-00001 GEB JFM, 2010 WL 3171067, * 1-2 (E.D. Cal. Aug. 11, 2010) (striking new allegations supporting a federal law claim because the court had granted leave to amend only state law causes of action); *Carbajal v. Dorn*, No. CV-09-283 PHX DGC, 2010 WL 487433, *1-2 (D.Ariz. Feb. 4, 2010) (granting a motion to strike an amended complaint that "contain[ed] a host of entirely new facts, claims, and allegations against" existing defendants where leave had been granted to add a new defendant after the court found him to be a necessary party under Rule 19(a)); *U.F.C.W. Local 56 Health and Welfare Fund v. J.D.'s Market*, 240 F.R.D. 149, 154-55 (D.N.J. 2007) ("Because Counts Three through Six of Plaintiffs' SAC exceeded the scope of the leave Plaintiffs were given, the Court must strike these claims.  While a motion to strike is 'generally viewed with disfavor and should b[e] used sparingly,' use of Rule 12(f) is appropriate here because to hold otherwise would be to essentially ignore . . . the requirement that a plaintiff seek leave before amending its complaint. . . .  Allowing Counts Three through Six to remain would . . . allow Plaintiffs to circumvent the limitations Judge Donio expressed at the May 11, 2006 hearing"); *Hellauer v. Nafco Holding Co., LLC*, No. 97-4423, 1998 WL 472453, *3 (E.D. Pa. July 28, 1998) (holding that "the failure to seek the required leave of court when adding a new allegation is grounds for striking that allegation" under Rule 12(f), citing *Readmond v. Matsushita*, 355 F.Supp. 1073, 1080 (E.D. Pa. 1972)).

**B.  Whether the Court Should Strike the Allegations in the Third Amended Complaint Concerning Competitors' Products**

In addition to including allegations that defendant's Nucoa labels violated various FDA regulations – allegations defendant does not seek to have the court strike – the third amended complaint alleges that as a result of the FDA labeling violations, "SBI suggested Nucoa was better than or healthier than competitor products" whose labeling complied with the regulations.[24] Plaintiff asserts that in comparison to properly labeled competitor products, SBI's "representation was especially insidious, and therefore especially deceptive, false and misleading . . . ."[25]

Defendant contends that "the only leave to amend the Court granted Plaintiff was to plead that Smart Balance's use of the terms 'Margarine,' 'No Cholesterol,' 'Cholesterol Free' and 'healthy' on Nucoa labels did not comply with FDA regulations, and thus constituted violations of the Sherman Law. The Court's Order does not contemplate entirely new allegations or theories . . . expanding the scope of this litigation."[26] Defendant asserts that, contrary to the limited scope of the leave to amend granted, "[p]laintiff has . . . treated [the opportunity to amend] as a license to start over" by "retaining her [original] theory that the presence of trans fat in Nucoa [made] Smart Balance's label . . . misleading" and "add[ing] complete[ly] different legal theories of deception. . . ."[27] It argues that "Plaintiff's new theory [regarding competitor products] implicates the labels of other, as yet unidentified, margarine products sold in the 10 years prior to [the filing of the action]," and would require additional discovery so that the parties could develop information regarding other product labels and packages as they existed during the class period and whether they complied with FDA regulations. Defendant contends that this will require

---

[24]See TAC, ¶¶ 75-77, 84-85, 92-94, 98-99, 105-107, 117-119, 123-124, 131-132.

[25]See *id.*, ¶¶ 78, 86, 95, 100, 108, 120, 125, 133.

[26]Motion at 8.

[27]Reply at 1.

9

substantial third party discovery.[28]

Plaintiff's opposition fails entirely to address the allegations regarding "competitors' products." Instead, she focuses on allegations regarding defendant's violation of federal regulations that are not challenged in the motion to strike. Plaintiff asserts that her theory of the case theory has not radically changed. She notes that while she earlier alleged that SBI's use of the terms No Cholesterol, Cholesterol Free, and healthy on Nucoa were misleading because the claims were likely to deceive reasonable consumers into believing Nucoa was healthy despite the fact that it contains artificial trans fat, she now asserts that for more than a decade, federal law has prohibited SBI from making such representations on Nucoa's lable.[29] Defendant, however, does not challenge plaintiff's right to make such a claim.

The court agrees with defendant that allegations regarding competitors' products exceed the scope of the leave to amend that was granted, and posit a new factual theory that would unduly delay resolution of this action by requiring that the parties conduct discovery regarding a plethora of competitors' products that have not previously been at issue.[30] The court does not agree, however, that each paragraph defendant seeks to have stricken concerns competitors' products, as opposed to facts relevant to plaintiff's UCL claim based on the Sherman Law. Paragraph 75, for example, alleges that "[b]y violating § 101.13(h)(1), SBI failed to draw consumers' attention to the fact that, despite its lack of cholesterol, Nucoa was very high in fat." This allegation does not concern competitors' products. Similarly, paragraph 78 alleges that "[t]his representation was especially insidious, and therefore especially deceptive, false and misleading, in light of Nucoa's

---

[28]*Id.* at 2. Defendant cites paragraph 84 of the third amended complaint as an example. Paragraph 84 alleges "that competi[tors'] products are in compliance with all FDA regulations, and that such products disclose that margarines or similar spreads are naturally cholesterol-free. . . ." Defendant maintains that it will have to conduct substantial discovery to determine whether this is an accurate description of the labels of competing products and whether the labels complied with FDA requirements. (Motion at 9-10.)

[29]Opposition at 2-3 (record citation omitted).

[30]Reply at 5.

10

high trans fat content"; this asserts that defendant's failure to comply with the FDA regulation in question was misleading to consumers, a necessary element of a UCL claim.

The court, therefore, grants defendant's motion to strike the following paragraphs in the third amended complaint that address competitor products of Nucoa: ¶¶ 76 -77 ("Unlike SBI's Nucoa, competitor products in compliance with this regulation drew consumers' attention to their high fat content. Therefore, by violating the regulation and using 'Cholesterol Free' without the required disclaimer, SBI suggested Nucoa was better than or healthier than competitor products."); ¶¶ 84-85 ("Competitor products in compliance with this regulation disclosed that margarines or similar spreads are naturally cholesterol-free foods, rather than specially processed to remove cholesterol, as SBI's 'Cholesterol Free' claim on Nucoa falsely suggests. By violating the regulation and using 'Cholesterol Free' without the required disclaimer, SBI misleadingly suggested Nucoa was better than or healthier than competitor products."); ¶¶ 93-94 ("Unlike SBI's Nucoa, competitor products in compliance with this regulation drew consumers' attention to their high fat content. Therefore, by violating the regulation and using 'Cholesterol Free' without the required disclaimer, SBI suggested Nucoa was better than or healthier than competitor products."); ¶ 99 ("Competitor products in compliance with this regulation would have had to disclose such high levels of fat. Therefore, by violating the regulation and using 'Cholesterol Free' without the required disclaimer, SBI misleadingly suggested Nucoa was better than or healthier than competitor products"); ¶¶ 106-107 ("Competitor products in compliance with this regulation disclosed that margarines or similar spreads are naturally cholesterol-free foods, rather than specially processed to remove cholesterol, as SBI's 'Cholesterol Free' claim on Nucoa falsely suggests. By violating the regulation and using 'Cholesterol Free' without the required disclaimer, SBI misleadingly suggested Nucoa was better than or healthier than competitor products"); ¶¶ 118-119 ("Unlike SBI's Nucoa, competitor products in compliance with this regulation drew consumers' attention to their high fat content. Therefore, by violating the regulation and using 'No Cholesterol' without the required disclaimer, SBI suggested Nucoa was better than or healthier than competitor products"); ¶ 124 ("Competitor products in compliance with this regulation would have had to disclose such high levels of fat. Therefore, by violating the

regulation and using 'No Cholesterol' without the required disclaimer, SBI misleadingly suggested Nucoa was better than or healthier than competitor products"); ¶¶ 131-132 ("Competitor products in compliance with this regulation disclosed that margarines or similar spreads are naturally cholesterol-free foods, rather than specially processed to remove cholesterol, as SBI's 'No Cholesterol' claim on Nucoa falsely suggests. By violating the regulation and using 'No Cholesterol' without the required disclaimer, SBI misleadingly suggested Nucoa was better than or healthier than competitor products"). The court denies defendant's request to strike paragraphs that do not reference competitor products and that assist plaintiff in stating a UCL claim based on defendant's alleged violation of FDA regulations and the Sherman Law.[31]

### C. Whether the Court Should Strike New Allegations in the Third Amended Complaint Unrelated to Plaintiff's Sherman Law Claim

Defendant also moves to strike certain additional allegations included in plaintiff's third amended complaint that it contends are unrelated to the Sherman Law-based UCL claim.

#### 1. Paragraph 11

Paragraph 11 alleges that "[t]he majority of Nucoa manufactured during the Class Period was manufactured in California."[32] Defendant contends this allegation "has nothing to do with the Sherman Law claim and disregards the undisputed fact that a third party is the manufacturer" of the product.[33] Plaintiff concedes that paragraph 11 "do[es] not strictly relate to [her] allegations that SBI violated the FDCA (and by extension California's Sherman Law) in labeling Nucoa."[34] She asserts, however, that the court "should . . . decline to strike the allegation[ ] because [it is] relevant, not prejudicial to SBI, and will help facilitate [efficient] resolution of this action."[35]

---

[31] See TAC, ¶¶ 75, 78, 83, 86, 92, 95, 98, 100, 105, 108, 117, 120, 123, 125, 130, 133.

[32] *Id.*, ¶ 11.

[33] Motion at 8.

[34] Opposition at 7.

[35] *Id.* at 8.

12

Plaintiff represents that she intends to seek certification of a nationwide California law class, based in part on evidence that much of the Nucoa manufactured during the Class Period was manufactured in California. Plaintiff notes that SBI admits this, and asserts that permitting her to include this allegation in the third amended complaint, so that the court may refer to SBI's answer when considering whether to certify a nationwide California law class will promote judicial efficiency. She also asserts that SBI has not shown that it will be prejudiced "by an innocuous factual allegation about the location of manufacture."[36] Defendant counters that the proposed amendment is "anything but 'innocuous,'" since it is the basis upon which plaintiff will rest her request that the court certify a *nationwide* California law class.[37]

The court agrees with defendant. None of the three prior iterations of plaintiff's complaint alleged where "the majority of" Nucoa was manufactured. While presumably the parties have conducted some discovery on this subject – as it appears to be important in ascertaining whether plaintiff can certify a nationwide class – these paragraphs indisputably exceed the scope of the court's grant of leave to amend. The court afforded plaintiff the opportunity to amend for a limited purpose, and did not invite plaintiff to "effectively start[ ] this case over from scratch."[38] Plaintiff offers no justification for her failure to include this allegation in her earlier complaints; this is particularly pertinent in that she earlier filed a motion for class certification based on a complaint that did not include this fact. Given the limited time remaining before the close of discovery, the court concludes that defendant would be prejudiced by the inclusion of additional allegations to which it would be required to respond and concerning which it would be required to marshal proof. While the court appreciates plaintiff's desire to "promote[ ] judicial efficiency,"[39] failing to strike the allegation would encourage parties to "essentially ignore . . .

---

[36]*Id.*

[37]Reply at 7-8 (emphasis original and record citation omitted).

[38]Reporter's Transcript of Proceedings (March 14, 2011) at 7:19-20.

[39]Opposition at 8.

the requirement that a plaintiff seek leave before amending its complaint . . . [and] allow Plaintiffs to circumvent the limitations" the court placed on its grant of leave to amend. See *J.D.'s Market*, 240 F.R.D. at 154-55.

### 2. Paragraphs 165, 167-181

Paragraphs 165, 167-181 fall under the sub-heading "Delayed Discovery." Paragraph 165 alleges that plaintiff "was a reasonably diligent consumer looking for products . . . that were generally healthy and nutritious. Plaintiff exercised reasonable diligence in her purchases, use, and consumption of Nucoa."[40] Paragraphs 168 and 169 allege that "Plaintiff's failure to discover SBI's false and misleading advertising was reasonable in light of SBI's behavior in concealing and omitting material information about the content and detrimental health qualities of Nucoa. SBI (and/or its predecessors) was in a particularly good position to disseminate truthful, complete, and accurate information about Nucoa, but failed to do so."[41] Paragraphs 172-180 allege that in 2007 Smart Balance's CEO Steve Hughes made statements describing trans fat as the "nicotine of the American diet," among other things.[42]

Defendant is correct that the court "did not dismiss the Second Amended Complaint on statute of limitations grounds, but instead on the basis of federal preemption." It afforded plaintiff leave to amend "to provide a basis for non-preempted claims." The court did not "authoriz[e] Plaintiff to add new allegations" supporting her "'delayed discovery' contention[.]"[43] Plaintiff requested leave to amend to allege violations of the FDCA and Sherman Law.[44] The court granted this request. It did not grant plaintiff leave to revamp allegations regarding delayed discovery, a subject not addressed in the court's order on class certification. For this reason, the court grants

---

[40]TAC, ¶ 165.

[41]*Id.*, ¶¶ 168-169.

[42]*Id.*, ¶¶ 172-180.

[43]Motion at 10.

[44]Reply to Certify Class at 19 n.14.

14

defendant's motion to strike paragraphs 168 through 181.

The court declines to strike paragraphs 165 and 167, however. As noted, paragraph 165 states: "Plaintiff was a reasonably diligent consumer looking for products . . . that were generally healthy and nutritious. Plaintiff exercised reasonable diligence in her purchases, use, and consumption of Nucoa."[45] This allegation is essentially identical to paragraph 80 in plaintiff's second amended complaint.[46] As the allegation has not been "amended" in any substantive way, the court will not strike it as exceeding the scope of the court's order granting leave to amend. Paragraph 167 is directly related to the issue of federal preemption. It states that "many of the unlawful labeling practices complained of herein were of the nature of omissions and violations of federal law, and like members of the Classes and nearly all consumers, Ms. Yumul is not an expert on FDA regulations."[47] While the allegation is included to address delayed discovery, because it assists plaintiff in stating a UCL claim based on alleged Sherman Law violations, it is within the scope of the leave to amend that was given.

### 3. Paragraphs 182-198

Paragraphs 182-198 appear under the sub-heading "Reliance & Injury." Defendant contends that these paragraphs should be stricken because they are unrelated to a Sherman Law claim and because several of the allegations contradict plaintiff's sworn testimony in this case. Defendant cites plaintiff's allegation that she paid more for Nucoa than she would have paid for a comparable product,[48] noting that "[i]n her deposition testimony, . . . Plaintiff testified that Nucoa margarine's price was 'good,' that it was 'attractively-priced,' and that it was in the 'middle' of the price range for comparable products." It asserts that plaintiff's allegation that she paid a premium for Nucoa because of express and implied content claims contradicts this

---

[45]TAC, ¶ 165.

[46]SAC, ¶ 80 ("Ms. Yumul is a reasonably diligent consumer who exercised reasonable diligence in her purchases, use, and consumption of Nucoa Real Margarine").

[47]TAC, ¶ 167.

[48]Reply at 2.

15

testimony.[49]

For the reasons articulated above concerning plaintiff's allegations regarding competitors' products, the court agrees with defendant that much of the "Reliance & Injury" section of the third amended complaint exceeds the scope of the leave to amend that was granted. The court therefore grants defendant's motion to strike paragraph 183 ("When comparing such like products, even small differences matter to reasonable consumers and members of the Classes who, like Plaintiff, all else being equal, will generally choose the product which appears healthier, even if only slightly"); paragraphs 192-195 ("Nucoa costs more than similar products without misleading advertisements and misrepresentations, and/or would have cost less absent the false and misleading statements and material omissions described herein. Plaintiff and members of the Classes paid more for Nucoa, and would have been willing to pay less, if anything at all, had they not been misled by the false and misleading advertisements, misrepresentations and omissions complained of herein. Plaintiff and members of the Classes would not have purchased Nucoa at the prices they did, or would not have purchased Nucoa at all, absent SBI's false and misleading advertisements and misrepresentations. For these reasons, Nucoa was worth less than what Plaintiff and members of the Classes paid for it. Plaintiff and members of the Classes purchased Nucoa instead of competing products based on the false statements, misrepresentations, material omissions, and violations of law described herein").

The court disagrees with defendant, however, that other allegations are unrelated to plaintiff's Sherman Law claim. Paragraph 182, for example, alleges that "[l]ike all reasonable consumers and members of the Classes, Plaintiff considers a label's compliance with federal law a material factor in her purchasing decisions. Plaintiff is generally aware that the federal government carefully regulates packaged food labels and therefore has come to trust that information conveyed on packaged food labels is truthful, accurate, complete, and fully in

---

[49]Motion at 11.

16

accordance and compliance with federal law."[50] Paragraphs 184 and 185 allege that "like all reasonable consumers and members of the Classes, Plaintiff would not purchase a food product she knew was misbranded under federal law, see 21 U.S.C. § 343, which the federal government prohibits selling, *id.* § 331, and which carries with its sale criminal penalties, *id.* § 333. Plaintiff could not trust that the label of a product misbranded under federal law is truthful, accurate and complete. In light of the foregoing, reasonable consumers, including Ms. Yumul and the other members of the Classes, were and are likely to be deceived by SBI's advertising practices as detailed herein."[51] Paragraph 186 alleges that "[a] comparable product fully compliant with federal law would have appeared substantially different. The product would have either included no 'Cholesterol Free,' 'No Cholesterol,' or 'healthy' representations, or would have included significant additional information: that Nucoa contains 11g of total fat per serving; that Nucoa is, like all margarines, a naturally cholesterol-free food; and instructions specifically directing the attention[ ] of Plaintiff and members of the Classes to Nucoa's high total fat[.]" Paragraphs 188-191 allege that "[l]ike other members of the Classes, Ms. Yumul saw, understood, and relied on the Nucoa Labels depicted above when she made her decisions to purchase Nucoa. In particular, like other members of the Classes, Ms. Yumul saw and relied on the representations that Nucoa is 'healthy,' 'Cholesterol Free,' and has 'No Cholesterol' in making each of her purchases of Nucoa. Moreover, like other members of the Classes, Ms. Yumul relied on the overall perception, created by SBI through its unlawful, false and misleading labeling, that Nucoa was healthy and good for her cholesterol levels and the cholesterol levels of her family, in making each of her purchases of Nucoa. Like other members of the Classes, Plaintiff purchased Nucoa believing it had the qualities she sought based on its unlawful and deceptive advertising, and SBI's misrepresentations and omissions, but the product was actually unsatisfactory to her for the

---

[50]TAC, ¶ 182. The last sentence of paragraph 182 states that "[a]s a result, Plaintiff trusts she can compare competing products on the basis of their labeling claims, to make purchasing decision affecting her health and the health of her family." This is related to plaintiff's competitor products theory, and the court therefore strikes the sentence.

[51]*Id.*, ¶¶ 184-85.

17

reasons described herein."[52] Because these allegations concern plaintiff's reliance on packaging that allegedly violated FDA regulations and the Sherman Law, and/or plead the misleading nature of the FDA non-compliant packaging, they are within the scope of the grant of leave to amend.

Based on this analysis, the court grants defendant's motion to strike paragraphs 183, 193-195, and the last sentence of paragraph 182.

### 4. Paragraphs 199-218

Finally, defendant moves to strike paragraphs 199-218, which appear under the sub-heading "As a Result of This Lawsuit, SBI Reformulated & Relabeled Nucoa[.]" Defendant asserts that these paragraphs add "numerous new allegations concerning the reformulation of Nucoa," and that plaintiff has not previously based her claims on the fact that it reformulated the product.[53] Plaintiff concedes that paragraphs 199-218 "do not strictly relate to . . . allegations that SBI violated the FDCA (and by extension California's Sherman Law) in labeling Nucoa." She explains that the allegations are relevant to show that despite SBI's reformulation of the product, injunctive relief is still appropriate, and thus that "allegations about the continued necessity of injunctive relief will help facilitate . . . discussion [as to] whether certification under Rule 23(b)(2) or 23(b)(3) is more appropriate."[54] Defendant counters that the reformulated product, which plaintiff does not allege she purchased, is not relevant to the claims asserted in this litigation. Noting that the deadline for amending pleadings long since passed, it asserts that allowing plaintiff to add these allegations will not make the litigation more efficient, but "retard and complicate its

---

[52]*Id.*, ¶¶ 188-191. See also *id.*, ¶¶ 196-98 ("Instead of receiving products that have the advantages inherent in being free of trans fat, and not containing high levels of total fat, saturated fat, and sodium, Plaintiff and members of the Classes received a product made with dangerous artificial trans fat, and high in total fat, saturated fat and sodium, nutrients that, when consumed in excess, can contribute to or exasperate conditions caused by the consumption of artificial trans fat. Plaintiff and members of the Classes lost money as a result of SBI's deception in that they did not receive what they paid for. Plaintiff and members of the Classes altered their position to their detriment and suffered damages in an amount equal to the amount they paid for Nucoa").

[53]Motion at 11.

[54]Opposition at 7-8.

18

resolution." As a result, defendant contends, plaintiff cannot show the good cause required to amend the court's scheduling order.[55]

The court agrees with defendant. In the fifteen months this case has been pending, plaintiff has never attempted to state a claim based on defendant's reformulated version of Nucoa, which is trans fat-free. The allegations added to the third amended complaint appear to plead that defendant's voluntary reformulation of the product does not moot plaintiff's request for injunctive relief because defendant may choose to reintroduce trans fat at a later time. While these paragraphs do not plead a new claim for relief, they undisputably exceed the scope of the leave to amend granted. The court cautioned plaintiff that permitting her to amend to state a UCL claim based on the Sherman Law was not an invitation to "start[ ] . . . over from scratch."[56] Plaintiff has provided no justification for her failure to include these allegations in three earlier complaints. Given the limited time remaining before the close of discovery, defendant would be prejudiced by the inclusion of these allegations as to which no discovery has been conducted. The court therefore grants defendant's motion to strike paragraphs 199-218 of the third amended complaint.

---

[55] Reply at 7.

[56] Reporter's Transcript of Proceedings (March 14, 2011) at 7:19-20.

## III. CONCLUSION

For the reasons stated, the court grants defendant's motion to strike paragraphs 11, 76-77, 93-94, 99, 106-07, 118-19, 124, 131-132, 183, 193-195, 199-218 and the last sentence of paragraph 182. The court denies the balance of defendant's motion to strike. For clarity, the court directs plaintiff to file a fourth amended complaint that deletes the stricken allegations within seven days of the date of this order. No allegations may be added and no existing allegations that have not been stricken may be changed. Defendant is directed to file an answer within fourteen days of service with the fourth amended complaint.

DATED: May 27, 2011

*Margaret M. Morrow*
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE